# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

CHARLES E. BROWN,                          )
                                           )
                    Petitioner,            )        **CIVIL ACTION**
                                           )
v.                                         )        No. 06-3046-MLB
                                           )
DAVID R. MCKUNE, WARDEN,                   )
LANSING CORRECTIONAL FACILITY,             )
and PHILL KLINE, KANSAS                    )
ATTORNEY GENERAL,                          )
                                           )
                    Respondents.           )
_____)

## MEMORANDUM AND ORDER

## 1.  INTRODUCTION

     This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1.)  The matter has been fully briefed and is ripe for decision.  (Docs. 2, 3, 4, 6, 9, 14, 17, 19.)  The application is DENIED for reasons set forth herein.

     On September 6, 1996, petitioner was convicted of the first degree murder of Michael Gerhard and sentenced to a term of life imprisonment by the Wyandotte County, Kansas district court.  In a federal habeas proceeding, the state court's factual findings are presumed correct and petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). The following recitation of facts is taken from the Kansas Supreme Court's opinion in petitioner's direct appeal:

> Although the body of the victim, Michael Gerhard, was not found, the case against Brown was based on the testimony of one of Brown's employees, Shawn Cordray; Brown's former girlfriend, Glenda Sands; a jailhouse companion of Brown's,

Shannon Cooper; and circumstantial evidence including an expert opinion of a canine search and rescue individual and admission of bone and teeth fragments located where the alleged cremation of the body took place.

Brown denied the crime, said it was committed by Cordray, stated his former girlfriend was out to get him, contended his cell mate made up his testimony to attempt to obtain reduction of charges against him, and the evidence was insufficient to prove his guilt beyond a reasonable doubt. Highly summarized, the testimony of the principal witnesses are as follows:

Shawn Cordray

Cordray worked for Brown at the salvage yard he owned. A house on the property was used for storage and to house Brown's pets. On October 31, 1995, the house burned and the pets were killed in the fire. Brown was angry. After being told there was a strong odor of gasoline and that it appeared to be an arson fire, Brown said that "if he found out who did it, that he was going to kill them." Cordray said Brown asked him to stay in a camper at the salvage yard to look after the property.

Cordray testified Brown thought Gerhard had burned down the house because Gerhard had called the night of the fire. Gerhard did not work at the salvage yard but occasionally visited to "pick up different things." A week after the fire, Gerhard arrived at the salvage yard in his van and spent the night in the camper with Cordray. Around 10 the next morning, Cordray testified that "Charlie came up to Mike and said he had to talk to him and they went to the camper." Cordray said he was approximately 25 feet away from the camper and could hear muffled yelling for a few minutes and then quiet. Cordray testified Brown led him inside the trailer where he saw Gerhard inside the bathroom "crunched on his calves" with a trickle of blood under his nose. His face was pale, his lips were blue, and there were marks on his neck.

Cordray testified Brown said he had killed Gerhard because he had burned down his house. Cordray was directed to wrap Gerhard's body in plastic and place it on a burn pile located behind the trailer. Cordray said he assisted Brown in placing big logs and gas and diesel fuel on the pile, then added more wood and more diesel fuel and Brown ignited it. Cordray testified he and Brown kept the fire burning through the rest of the day and the following morning when Brown directed him to "rake up the ashes, make sure there's no bones in there."

Cordray said his brother, David Cordray, who also worked

-2-

for Brown, came to the salvage yard on the day of the burning, but he did not tell his brother what had happened because he did not want to put him in danger.

Cordray testified Brown told him to tell anyone who asked that Gerhard went back to Iowa because he missed a "court thing up there." When asked why he helped, Cordray said: "I was scared" and if he told anyone about Gerhard's death, Brown would hurt him and his family.

Cordray stated Brown took possession of some of Gerhard's property, which was sold at a flea market. Gerhard's van was sold to David Cordray for $300. Some of Gerhard's tools were sold in January 1996 to David Servais. Gerhard's name was etched on the tools, and Servais contacted the police and surrendered the tools after reading about Gerhard's disappearance in the newspaper.

Cordray said he quit working for Brown in January 1996, and contacted the police through a friend of his mother's. Cordray testified he was present when the police executed a search warrant on the salvage yard. He pointed out the mound of earth and ashes located under a cardboard box where the fire had taken place. Search dogs trained to detect the scent of human remains were brought to the scene and alerted on the location identified by Cordray.

## Glenda Sands

Glenda Sands, who had been Brown's girlfriend and business partner, testified Brown told her he believed Gerhard had started the fire to cover up his thefts from him. She asked why Gerhard's van was on the property and was told by Brown that Gerhard had "left and was angry and walked away." However, she further stated that in December 1995, Brown wrote a note to her which stated he had strangled Gerhard and burned his body. The note was written because Brown believed his house was bugged. Sands stated Brown told her if she told anyone he would kill her and bomb her parent's house. The note was burned in the kitchen sink. Eventually, Brown and Sands broke up, and she made her story known to the police.

The evidence showed that after Cordray and Sands gave their statements to the police and the search of the salvage yard was completed, Brown was not at his residence when the police arrived to take him into custody. Brown was found in some brush wearing only his jeans.

### Shannon Cooper

Shannon Cooper, an inmate in the Wyandotte County Jail, met Brown while in custody. Cooper testified he asked Brown what he was in for and Brown told him "he had killed a man named Michael Gerhard." Cooper testified Brown related the strangling of Gerhard by wrapping a cord around his neck in the bathroom. Brown said an employee named Cordray helped him wrap the body in plastic and place it on a burn pile and, after being burned a day, it was buried in a hole with a Model T car placed over the burial site. Cooper testified Brown told him he killed Gerhard because he had stolen some drugs and burned down a house on the property. Brown offered Cooper $500 up front and $2,000 after he was acquitted to testify that Cordray had committed the murder. Cooper also stated that Brown told him he was afraid that Shawn Cordray would go to the police, so he enlisted the help of David Cordray to dig up the remains of the body and dump it into the river.

Cooper went to his attorney with this information and struck a deal with the prosecution: In return for his testimony, the forgery charges against him would be dismissed and his probation would not be revoked.

### Anthony Serrano

Gerhard's landlord, Anthony Serrano, testified there was no indication Gerhard was at his residence during the month of November. By January most of his possessions were gone. Only Gerhard's dog and Harley Davidson motorcycle were still on the premises. These items were stated to be Gerhard's prized possessions and if he left he would have taken them with him.

### David Cordray

David Cordray testified that Gerhard's van was at the salvage yard. He had asked the defendant where Gerhard was and was told that Gerhard "got whacked out on crank" and wandered off.

### Irene Korotev

Irene Korotev testified she and her dog Tino along with another handler and his dog were asked to assist in a search at the salvage yard for a human body. Tino is trained to detect the scent of human remains and she is trained to interpret her dog's behavior. She was only told there was a possibility of human remains; however, Tino "alerted" on a mound of soil and ashes beneath a large cardboard box.

Testimony was presented that the police contacted the street department who removed a section of earth surrounding the area indicated by Cordray as the burn site. The removed dirt was transported to a sanitation department, where it was examined by an anthropologist from the University of Kansas and human bones and teeth fragments, that appeared to be heavily burned, were discovered.

### Charles Brown

Brown took the stand and contended the night of the fire he was at home with Sands. After Gerhard informed them of the fire, he suspected several individuals including Gerhard. Brown testified Gerhard discovered a gas can in a clothes dryer and from then on, Gerhard was no longer a suspect. Brown testified that on November 5 when he went to the salvage yard, Shawn Cordray was already there and a fire was burning, with something in the fire that looked like rib bones. Brown contended he asked Cordray about it but Cordray said Brown did not know what he was talking about. He did not pursue the matter further because he was already in trouble with the city due to some code violations related to the salvage yard.

Brown testified Sands told him Gerhard's landlord wanted the property removed but that the items taken actually were his which Gerhard had stolen or borrowed from him. Brown further testified that he received the keys to Gerhard's van from Cordray, who said he had fought with Gerhard, who was "high" and had wandered off. He further testified that Cordray confessed he had killed Gerhard and burned his body in a fire, a fact he had passed on to Sands. Brown denied all of the State's evidence. He testified he and Sands had a falling out when he discovered she was having an affair. Sands told him she would find a way to put him in jail. He admitted hiding when the police came to arrest him, but explained that he did so because he was never able to find out what the charge against him was. He acknowledged meeting Cooper in jail but contended Sands had known Cooper first. He denied telling Cooper anything about killing Gerhard, that Cooper had called Sands from jail, and that Cooper had a newspaper article from which he obtained the facts of the case.

### Kathy Creason

Kathy Creason testified for the defense. She was engaged to marry Brown's brother. She testified that she went to the trailer at the salvage yard to repay money Cordray had loaned her. When she opened the door to the trailer, "Shawn was standing there with a propane torch turned on full blast and stuck it in my face and told me that I shouldn't

-5-

fuck with him because he was going to kill me just like he did Mike and I should know better." Creason testified Sands asked her to help her think of a way to get Brown out of her life. Creason also admitted to being a drug addict but said that she had entered a drug rehabilitation program on December 26, 1995.

### Faith Spruill

Faith Spruill was a inmate who knew all of the parties. She testified she saw Gerhard at the salvage yard several weeks after the alleged murder. She testified Cordray had told her he hated Gerhard and that he had gotten into a fight with him in which Gerhard hurt his back.

### Johnny Hogue

Johnny Hogue, another inmate, testified he knew both Brown and Cooper. Hogue testified that shortly before Brown's trial, Cooper told him he was testifying. Hogue said Cooper stated, "I made a deal with Glenda. I'm going to hang his ass." On cross-examination, Hogue denied making up his testimony and denied that Brown had promised him anything for his testimony, although he did admit to speaking with Brown while in jail.

The Kansas Supreme Court affirmed petitioner's conviction on direct appeal. State v. Brown, 266 Kan. 563, 973 P.2d 773 (1999). The Kansas Court of Appeals affirmed the denial of petitioner's collateral K.S.A. § 60-1507 motion. Brown v. State, No. 86,628 (Kan. Ct. App. Sept. 27, 2002). The Kansas Supreme Court also affirmed denial of petitioner's "motion to correct illegal sentence." State v. Brown, 280 Kan. 898, 127 P.3d 257 (2006).

## II.  ANALYSIS

This court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in the AEDPA, if petitioner's claim has been decided on the merits in a state court,

-6-

a federal habeas court may only grant relief if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

> A state-court decision is contrary to established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state-court decision is an unreasonable application of federal law under § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S.Ct. 1495. What is "reasonable" is determined under an objective test rather than by, say, determining whether a judge somewhere has so ruled. See id. at 409-10, 120 S.Ct. 1495.

Bush v. Neet, 400 F.3d 849, 851-52 (10th Cir. 2005). An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of federal law. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991).

Moreover, a federal court will not normally consider federal questions unless they have first been presented to the state courts. Picard v. Connor, 404 U.S. 270, 277-78 (1971); but see 28 U.S.C. § 2254(b)(2) (permitting denial on the merits, despite failure to exhaust state remedies). Where, as here, the state provides an effective means to correct alleged errors in a petitioner's state criminal proceedings, AEDPA requires each petitioner to exhaust those state remedies before bringing a federal habeas petition. 28 U.S.C.

-7-

§ 2254(b)(1).

On direct appeal of his conviction and sentence, petitioner alleged nine errors: 1) denial of a motion for a change of trial judge; 2) violation of his speedy trial right; 3) error in ruling on a motion for a transcript of the preliminary hearing; 4) error in permitting admission of bone and teeth fragments; 5) allowing testimony from a volunteer for a search and rescue canine organization; 6) denial of his request for services of an investigator; 7) limitation of cross-examination; 8) ineffective assistance of trial counsel (Barry Albin) based on Albin's lack of competence because he had not previously handled a murder case, failed to interview witnesses, failed to preserve issues for appeal, worked under a conflict of interest, and failed to impeach witnesses; and 9) cumulative error.  Br. of Appellant in <u>State v. Brown</u>, 266 Kan. 563, 973 P.2d 773 (1999).

On state collateral appeal, petitioner alleged: 1) ineffective assistance of counsel (Barry Albin) for failing to file a pretrial suppression motion to exclude prior bad acts testimony, opening the door to prior bad acts testimony, failing to object to unidentified teeth and bone fragments as prejudicial and because the evidence was never given to the defense counsel for testing, failing to object at trial to Glenda Sands' testimony based on marital privilege, failing to cross-examine Shannon Cooper about previously being an informant, failing to use all the testimony of David McGee and allowing him to be struck as a witness, failing to request an accomplice instruction concerning Shawn and David Cordray, failing to request an instruction

-8-

on prior bad acts testimony, failing to request a credibility instruction concerning witness Shannon Cooper, failing to renew a motion for an investigator, and failing to have a preliminary hearing tape transcribed; and 2) ineffective assistance of counsel (Patricia Kalb) at petitioner's hearing on his motion for a new trial for failing to call certain witnesses and put on certain evidence. Br. of Appellant in <u>Brown v. State</u>, No. 86,628 (Kan. Ct. App. Sept. 27 2002). In his pro se brief on state collateral appeal, petitioner also alleged: 1) ineffective assistance of appellate counsel for failing to challenge the sufficiency of the evidence of his murder conviction; 2) insufficient evidence to convict of first degree murder; 3) a violation of due process because the trial judge failed to give a limiting jury instruction regarding prior bad acts; and 4) he was not given a meaningful hearing by the district court on his K.S.A. § 60-1507 motion. Supp. Br. of Appellant in <u>Brown v. State</u>, No. 86,628 (Kan. Ct. App. Sept. 27 2002).

In his motion to correct illegal sentence, petitioner alleged: 1) K.S.A. § 21-3401 (Kansas' first degree murder statute) is unconstitutionally vague because the legislature eliminated the word "malice" from the statute; 2) the absence of the word "malice" shifted the burden of proof to the petitioner; and 3) the trial court should have instructed the jury regarding the element of malice. Br. of Appellant in <u>State v. Brown</u>, 280 Kan. 898, 127 P.3d 257 (2006).

Petitioner's application in this court for federal habeas relief states nine broad grounds for relief. Petitioner alleges violations of federal constitutional law based on: 1) the trial judge's denial

-9-

of a motion for a change of judge; 2) a speedy trial violation for a continuance that was granted for an "experimental D.N.A. test, never prod[u]ced  and false assertions of the state;" 3) refusal of his request for the transcript of a preliminary hearing; 4) admission of unidentified bone and teeth fragments; 5) ineffective assistance of trial counsel (Patricia Kalb) at petitioner's hearing on his motion for a new trial; 6) ineffective assistance of trial counsel (Barry Albin); 7) an incomplete hearing on his K.S.A. § 60-1507 collateral motion; 8) insufficient evidence to convict; and 9) the unconstitutionality of the Kansas first degree murder statute under which petitioner was convicted.  (Doc. 1.)

Petitioner's application for federal habeas relief appears to assert grounds that have been exhausted in the state courts. Petitioner's grounds one, two, three, and four were raised on direct appeal; grounds five, six, seven, and eight were raised on collateral appeal; ground nine was raised in the motion to correct illegal sentence.  Respondent concedes exhaustion but asserts that several of petitioner's claims are procedurally defaulted.  In consideration of the large number of petitioner's alleged grounds for relief, the court will address each ground in the order they are alleged by petitioner.

A.   GROUND ONE - TRIAL JUDGE BIAS

Petitioner states his first ground for habeas corpus relief as follows: "Petitioner's Due Process and Right to Fair Trial was violated when trial judge denied defense counsel's Motion for Change of Judge?"  Petitioner's supporting facts state:

Prior to trial, Defence counsel filed a motion

-10-

>           for recusal of Trial Judge, Dexter Burdette.
>           Counsel filed several affidavits in support of
>           this motion.   These affidavits stated that Mr.
>           Brown would not be able to receive a fair trial
>           because of annomoticity of trial judge towards
>           defence counsel.  Prejudice is shown by the fact
>           that the judge who was accused of Bias was the
>           same judge who rulled on the motion for change of
>           judge. [sic throughout]

(Doc. 1.)  Respondent asserts that this ground has been procedurally

defaulted by petitioner and is therefore not reviewable by this court.

(Doc. 17 at 12.)

When a federal habeas petitioner's claim has been defaulted in

state court on an independent and adequate state ground, federal

habeas courts will not generally address the issue.  Coleman v.

Thompson, 501 U.S. 722, 750 (1991); Klein v. Neal, 45 F.3d 1395, 1397

(10th Cir. 1995) ("It is now beyond cavil that the adequate and

independent state ground doctrine is fully applicable to federal court

review of habeas corpus petitions.").  "A state procedural ground is

independent if it relies on state law, rather than federal law, as the

basis for the decision.  For the state ground to be adequate, it must

be strictly or regularly followed and applied evenhandedly to all

similar claims."  Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir.

1998).  Under those circumstances, a federal habeas court will only

consider a claim if the petitioner can demonstrate "cause and

prejudice or a fundamental miscarriage of justice."  English v. Cody,

146 F.3d 1257, 1259 (10th Cir. 1998).

In reviewing this ground on direct appeal, the Kansas Supreme

Court held:

>           The State's argument [that Brown's motion for

> change of judge was not timely] is valid, and the failure to file within the statutory time period bars the issue on appeal. [citation omitted] In addition, the affidavits of the two nonparties are not to be considered. The contentions of Brown were conclusory and not sufficient. Brown's counsel's statement was not prepared in affidavit form or properly executed under the statute [governing motions for a change of judge]. The record reflects the administrative judge of the judicial district did consider the motions, reviewed all the documents, and properly denied the motion. This contention is without merit.

State v. Brown, 266 Kan. 563, 570, 973 P.2d 773, 778 (1999). It is clear that the Kansas Supreme Court determined this issue adversely to petitioner on an independent state ground. The Kansas Supreme Court's decision was based on the Kansas statute governing the time for filing and procedural aspects of motions for a change of trial judge. See K.S.A. § 20-311d (governing motions for a change of judge). The Court considered no federal precedent of any kind in reaching its determination. The Court's determination is also adequate because it is a regularly followed, evenly applied Kansas statute. See, e.g., Carpenter v. State, 223 Kan. 523, 525, 575 P.2d 26, 29 (1978); State v. Timmons, 218 Kan. 741, 749, 545 P.2d 358, 364 (1976).

Therefore, petitioner's claim is procedurally defaulted, and may only be considered by this court upon a showing of cause for the default and resulting prejudice, or in order to prevent a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Cause for default must be some objective factor, external to petitioner and his counsel, "something that cannot fairly be attributed to [them]." Id. at 753. "Examples of such objective factors include a showing that the factual

-12-

or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995)(internal quotations and citations omitted).  Petitioner has made no such allegation of cause, and the court cannot find any basis in all of petitioner's briefing to give cause for procedural default of ground one. Ineffective assistance of counsel can be cause for procedural default, Murray v. Carrier, 477 U.S. 478, 488 (1986).  However, the exhaustion doctrine requires "that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Id. at 489.  Petitioner has not raised an ineffective assistance of counsel claim with regard to his counsel's performance on the motion for a new trial judge.

Moreover, petitioner has not shown prejudice.  Petitioner believes evidence of prejudicial effect is shown because: 1) the trial judge did not give a limiting instruction after prior crimes testimony had been introduced by petitioner's trial counsel; and 2) the trial judge allowed further testimony of prior crimes over objection by petitioner's trial counsel.  Petitioner cannot show actual prejudice by challenging evidentiary rulings.  See id. at 494 ("The habeas petitioner must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.").  Petitioner's allegations of prejudice because of adverse trial rulings are insufficient.

Finally, a fundamental miscarriage of justice in this context

-13-

means that the petitioner is probably innocent of the crime. <u>Phillips</u> <u>v. Ferguson</u>, 182 F.3d 769, 774 (10th Cir. 1999). Although the evidence against petitioner was only circumstantial, it was significant in volume, compelling, and far more than was necessary to permit the jury to convict him of the crimes charged beyond a reasonable doubt. Hence, the court finds no fundamental miscarriage of justice. Therefore, this claim of bias by the trial judge is procedurally defaulted.

Even if the merits of petitioner's claim were to be considered, however, there are few constitutional bases for recusal. <u>See</u> <u>Aetna</u> <u>Life Ins. Co. v. Lavoie</u>, 475 U.S. 813, 820 (1986). "[N]ot '[a]ll questions of judicial qualification . . . involve constitutional validity. Thus, matters of kinship, <u>personal bias</u>, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." <u>Id.</u> (quoting <u>Tumey v. Ohio</u>, 273 U.S. 510, 523 (1927)) (emphasis added). In keeping with that standard, the Supreme Court has only recognized a handful of situations in which a judge's impartiality might be so impaired as to violate due process. Such situations include a showing of actual bias, <u>In re Murchison</u>, 349 U.S. 133, 136 (1955), or cases in which the judge has a direct financial interest in the outcome of the case. <u>Tumey</u>, 273 U.S. at 523. Beyond those narrow circumstances, the requirements for recusal are ordinarily governed by statute. <u>Aetna</u>, 475 U.S. at 820, 106 S. Ct. at 1584.

The review under Kansas law for judicial bias is limited as well. The Kansas Supreme Court has articulated the standards for evaluating

-14-

a motion under K.S.A. § 20-311d, the statute governing motions for a change of judge, as follows:

> Where the defendant in a criminal action contends the trial judge was biased and partial, the determination as to whether the defendant received a fair trial involves a two-part analysis: (1) Did the trial judge have a duty to recuse under the Code of Judicial Conduct? (2) If he did have a duty to recuse and failed to do so, was there a showing of actual bias or prejudice to warrant setting aside the judgment of the trial court?
>
> The standard to be applied to a charge of lack of impartiality is: 'whether the charge of lack of impartiality is grounded on facts that would create reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances.'

State v. Griffen, 241 Kan. 68, 72, 734 P.2d 1089, 1093 (1987) (quoting State v. Logan, 236 Kan. 79, Syl. ¶ 5, 86, 689 P.2d 778 (1984)).  As this test plainly states, there can be no error when there is no showing of actual bias.  See also State v. Alderson, 260 Kan. 445, 454-55, 922 P.2d 435, 444 (1996).  Petitioner has not alleged facts showing actual bias.  Rather, petitioner has only made conclusory allegations of bias without supporting factual allegations, other than adverse evidentiary rulings.  Petitioner's application for habeas relief based on ground one is DENIED.

B.   GROUND TWO - VIOLATION OF THE RIGHT TO A SPEEDY TRIAL

Petitioner states his second ground for relief as follows: "Was Due Process and Right to Fair Trial and Speedy trial was violated by 90 day continuance for [a D.N.A.] test never produced and false assertion of the state?"  Petitioner supports this ground with the

-15-

following allegations:

> Prior to trial, the [prosecution] filed a motion for continuance for D.N.A. test on bone fragments and teeth found on defendant's salvage yard property.  Prosecution stated that this test was essential for the State's case.
>
> Prosecution also stated that it had obtained dental records of the alleged deceased, and needed time to match them to teeth found.
>
> At trial, no D.N.A. test was produced to support bone and teeth fragments, and Detectives admitted that there were never any dental records found.
>
> Petitioner attempted to [acquire] the D.N.A. test results and call witnesses to testify at his K.S.A. 60-1507 evidence hearing.  However Hearing judge denied petitioner's request.

(Doc. 1.)  In his supporting memorandum, petitioner elaborates on this ground by alleging the prosecution lied to the trial judge in order to obtain a continuance and that the trial should not have been continued to allow the prosecution to obtain the test because there had not been a proper showing of reliability of the test under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  (Docs. 14, 19.)

In reviewing this ground on direct appeal, the Kansas Supreme Court discussed only whether the grant of the continuance violated petitioner's statutory speedy trial right under K.S.A. § 22-3402. Section 22-3402 requires that an accused in custody be brought to trial within ninety days of arraignment.  However, subsection 22-3402(5)(c) allows a continuance if there is "material evidence which is unavailable; that reasonable efforts have been made to procure such evidence; and that there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next

succeeding 90 days." The Kansas Supreme Court held that petitioner's speedy trial right was not violated because the evidence sought by prosecutors was material, regardless of whether it resulted in admissible, reliable evidence at trial. State v. Brown, 266 Kan. 563, 571, 973 P.2d 773, 779 (1999).

The Sixth Amendment guarantees an accused a speedy trial. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set out a balancing test for determining whether the Sixth Amendment right to a speedy trial has been violated. The factors identified by the Court for this balancing are: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id. at 530. However, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." Id.

In this case, petitioner was arrested on January 26, 1996, arraigned on March 22, 1996, and tried on September 3, 1996. Thus, 221 days passed between petitioner's arrest and trial and 165 days passed from his arraignment to trial. Courts in this circuit have found delays of similar lengths not presumptively prejudicial. See United States v. Dirden, 38 F.3d 1131, 1138 (10th Cir. 1994) (passage of seven and one-half months, or 228 days, before trial on indictment for "narcotics and weapons charges" not presumptively prejudicial); United States v. Kalady, 941 F.2d 1090, 1096 (10th Cir. 1991) (finding an eight month delay in case of mail fraud, wire fraud and conspiracy not presumptively prejudicial). The delay experienced by petitioner was not, therefore, presumptively prejudicial.

-17-

Even if the delay experienced by petitioner was presumptively prejudicial, however, petitioner has not shown how the second and fourth Barker factors weigh toward finding a constitutional violation of the right to a speedy trial. The second Barker factor, reason for delay, must be explained by the prosecution. Here, the Kansas Supreme Court determined that petitioner's contention that the continuance was based on false information was without merit. Therefore, the argument made by the prosecutor at the time, that he needed to pursue evidentiary testing, satisfies the second Barker prong. Finally, petitioner has not alleged any prejudice caused to him by the granting of the continuance - he has raised no issue of oppressiveness or anxiety caused by his pretrial detention and no witnesses or evidence were hindered by the delay. See Jackson v. Ray, 390 F.3d 1254, 1264 (10th Cir. 2004) (determining whether the petitioner had shown prejudice by considering "the three interests that the speedy trial right was designed to protect: (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense." (citing Barker, 407 U.S. at 532.)). Petitioner's claim that the evidence would not have been admissible because it was unreliable in light of the Daubert standards has no bearing on whether his Sixth Amendment right was violated in light of the standards set forth by the Supreme Court in Barker. Petitioner's application for habeas relief based on ground two is DENIED.

C. GROUND THREE - AVAILABILITY OF A TRANSCRIPT OF THE PRELIMINARY HEARING

In his third ground, petitioner asks the following: "Did District

-18-

Court abused its discretion and denied Petitioner his const. right to fair trial and Eff. Ass of Counsel when it refused request for transcript of preliminary hearing?"  Petitioner's support for this ground is as follows: "Counsel filed a KSA 22-4509 request for copy of preliminary hearing transcript.  Judge refused a transcript and offered a tape of hearing.  Three witnesses testified at Petitioner's Preliminary hearing.  There would have been at least 2 hours of tape. This makes using the tape for impeachment purposes almost impossible." (Doc. 1.)

In Britt v. North Carolina, 404 U.S. 226, 227 (1971), the Supreme Court held that as a matter of equal protection, an indigent prisoner must be provided a transcript of a prior proceeding if it is needed to prepare an adequate defense.  Two factors are relevant to the determination of need: 1) the value of the transcript to a defendant in connection with the trial for which it is sought, and 2) the availability of alternative devices that would fulfill the same function as a transcript.  Id. at 227.  Need can be assumed, especially "as a tool for the trial itself for the impeachment of prosecution witnesses."  Id. at 228.

On petitioner's direct appeal, the Kansas Supreme Court stated the following:

> This is again an abuse of discretion issue and one that is without merit.  Brown's request for a transcript of the preliminary hearing was denied, but an audio tape of the preliminary hearing was made available.  In this situation, trial counsel indicated that a copy of the tape would be sufficient, but continued to contend that K.S.A. 22-4509 was violated.

-19-

> In <u>State v. Kelley</u>, 209 Kan. 699, 702-03, 498
> P.2d 87 (1972), we held that the requirement of
> availability of a record or transcript of a prior
> proceeding required by <u>Britt v. North Carolina</u>,
> 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400
> (1971), could be satisfied by alternative means.
> It is clear that Brown's counsel had sufficient
> access to the preliminary hearing testimony so
> that he was able to provide an adequate defense.
> The trial court did not err in denying Brown's
> request.

<u>State v. Brown</u>, 266 Kan. 563, 572, 973 P.2d 773, 779 (1999).

The Kansas Supreme Court's resolution of the issue is not contrary to, or an unreasonable application of federal law. <u>Britt</u> itself allows alternative methods of making prior testimony available to a defendant. The Kansas Supreme Court recognized that petitioner was given such an alternative means when he was given the audiotape of the preliminary hearing. Even without the AEDPA's deferential standard of review, courts have approved similar procedures, although doing so with hesitance differently. See <u>United States v. Vandivere</u>, 579 F.2d 1240 (10th Cir. 1978) (finding a tape recording of a preliminary hearing given to defendant in lieu of a transcript sufficient where the same counsel represented defendant both at the preliminary hearing and at trial, only eighteen days elapsed between the preliminary hearing and trial, and the trial was "very simple"). Therefore, it cannot be said that the Kansas Supreme Court's determination was an objectively unreasonable application of <u>Britt</u>'s requirements. Petitioner's application for habeas relief based on ground three is DENIED.

D.   GROUND FOUR - ADMISSION OF BONE AND TEETH FRAGMENTS

In ground four, petitioner alleges there was a denial of due

process by the trial court when the court admitted evidence regarding the recovery and presentation of unidentified bone and teeth fragments.   Petitioner's supporting facts state:

> Bone fragments and teeth were allowed as evidence that were never identified as those belonging to the alleged victim.   There was no scientific evidence presented to support them as ever belonging to alleged victim.  Nor was there any dental records presented to prove the same. Although a D.N.A. test was alleged to have been done, it was never produced, [despite] an discovery motion for it.

(Doc. 1.)   In his memorandum, petitioner asserts there was no foundation for the evidence, the evidence was not relevant or material, and the evidence was prejudicial.  (Doc. 14.)  Respondent asserts the claim that the evidence was prejudicial has been procedurally defaulted by petitioner.  (Doc. 17 at 18.)

As discussed above, a claim is procedurally defaulted, and thus unreviewable by a federal habeas court, when the claim has been defaulted in state court on an independent and adequate state ground. Coleman v. Thompson, 501 U.S. 722, 750 (1991). "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision.  For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims."  Hickman v. Spears, 160 F.3d 1269, 1271 (10th Cir. 1998).  When a claim has been defaulted in state court on independent and adequate state grounds, the federal habeas court will only consider the claim if petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998).

The Kansas Supreme Court addressed the admission of the bone and teeth evidence on direct appeal.  Regarding petitioner's claim that the admission of the bone and teeth fragments was prejudicial, the Court determined that the argument was not preserved for appeal.  At trial, the basis for counsel's objection was relevancy, not prejudice. The Court, therefore, declined to consider petitioner's argument that the evidence was more prejudicial than probative.  State v. Brown, 266 Kan. 563, 573, 973 P.2d 773, 780 (1999).

Thus, a claim by petitioner that the bone and teeth fragment evidence should have been excluded because the evidence was prejudicial is procedurally defaulted.  The Kansas Supreme Court's ruling that it will not hear arguments not raised in the trial court is long-established and specifically reliant on state law.  See K.S.A. § 60-404 ("A . . . finding shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."); State v. Cooper, 252 Kan. 340, 349, 845 P.2d 631, 638 (1993) (refusing to consider an objection to evidence based on prejudice when the objection at trial was based on relevance).

Despite being procedurally defaulted, petitioner's claim could be heard if he shows cause for the default and actual prejudice. Petitioner alleges cause within his allegation of ineffective assistance of trial counsel for failing to object to the admission of the bone and teeth fragments as prejudicial.  Petitioner, however, must not only show cause for failure to raise the issue when required,

-22-

he must also show that the failure produced actual prejudice. Thornburg v. Mullin, 422 F.3d 1113, 1141 (10th Cir. 2005). Petitioner has neither alleged nor shown actual prejudice. Because cause and prejudice must be shown, petitioner has not overcome the procedural default on this basis. As discussed within ground one, petitioner has also not shown a fundamental miscarriage of justice because he has not shown that he is probably innocent of the crime. Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999).

However, petitioner's claim that the evidence lacked foundation and was therefore not relevant or material was addressed on its merits by the Kansas Supreme Court. State v. Brown, 266 Kan. 563, 572-73, 973 P.2d 773, 779-80 (1999). A federal habeas court, however, may not grant relief based on a state court's alleged error in applying its own law absent a finding that the state court's ruling was so arbitrary and capricious as to constitute an independent constitutional violation. Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

The Tenth Circuit has provided the following guidance when reviewing state evidentiary rulings in a habeas case brought under 28 U.S.C. § 2254:

> We may not provide habeas corpus relief on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir.), cert. denied, 531 U.S. 1020, 121 S.Ct. 586, 148 L.Ed.2d 501 (2000). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint."

-23-

<u>United States v. Rivera</u>, 900 F.2d 1462, 1477 (10th Cir. 1990) (emphasis added). Again, petitioner has alleged no facts which would place him in a position for federal habeas relief. It is true that petitioner was convicted based largely on circumstantial evidence, but this alone is insufficient to make petitioner's trial "fundamentally unfair." As discussed throughout this memorandum and order, there was more than sufficient evidence for the jury to weigh the testimony admitted and to convict petitioner. Petitioner's application for habeas relief on this ground in DENIED.

E.   GROUNDS FIVE AND SIX - INEFFECTIVE ASSISTANCE OF COUNSEL

A claim for ineffective assistance of counsel in violation of the Sixth Amendment requires petitioner to show that 1) his counsel's performance fell below an objective standard of reasonableness; and 2) but for his counsel's unreasonable errors, there is a reasonable probability that the outcome of the proceeding would have been different. <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000); <u>Strickland</u>, 466 U.S. at 688, 694 (1984). In evaluating the performance of trial counsel, the Supreme Court provided the following guidance:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, <u>a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance</u>; that is, <u>the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."</u> <u>See</u> <u>Michel v. Louisiana</u>, supra,

-24-

350 U.S., at 101, 76 S. Ct., at 164.

. . .

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 466 U.S. at 689-90 (emphasis added). Under this standard, counsel's performance is presumed competent, and petitioner bears the burden of rebutting that presumption. In reviewing petitioner's claims, the Kansas Supreme Court on direct appeal and the Kansas Court of Appeals on collateral appeal relied on the Strickland standards.

1. Post-Trial Counsel Patricia Kalb

Petitioner claims that his appointed post-trial counsel, Patricia Kalb was ineffective based on the following:

> Motion for Retrial counsel called no witnesses even though four were listed in the court file in the motion and a letter addressed to the trial judge. Counsel admitted she was told of witnesses which refused to talk to. Counsel presented no evidence although some was listed in the Motion. Counsel failed to question trial counsel about his ineffectiveness when this was

-25-

                    the reason for the Motion.   Counsel had
                    petitioner not to testify.  Counsel did not visit
                    petitioner at the jail to discuss the case prior
                    to the hearing.

(Doc. 1.)  The Kansas Court of Appeals reviewed these claims on their

merits and affirmed the finding of the trial court that Kalb's

performance was not ineffective.  Brown v. State, No. 86,628 (Kan. Ct.

App. Sept. 27, 2002).

     The trial court heard conflicting evidence from petitioner and

Kalb regarding whether Kalb had spoken to petitioner before the day

of the hearing and whether she knew of witnesses petitioner alleged

he informed her of.  The trial court also heard conflicting evidence

regarding petitioner's decision not to testify at the post-trial

proceeding at which he was represented by Kalb.  The Kansas Court of

Appeals specifically held that the trial court's credibility

determination made on this conflicting testimony would not be

disturbed as it was a factual issue supported by sufficient evidence.

Brown v. State, No. 86,628 (Kan. Ct. App. Sept. 27, 2002).  Despite

that the Kansas appellate courts decided some of the petitioner's

clams in summary fashion, the AEDPA deferential standard nevertheless

applies.  See Sperry v. McKune, 445 F.3d 1268, 1272 (10th Cir. 2006)

(citing Goss v. Nelson, 439 F.3d 621, 635-36 (10th Cir. 2006) ("In the

context of applying 28 U.S.C. § 2254(d), our focus is on whether the

result reached by the state court contravenes or unreasonably applies

clearly established federal law, not on the extent of the reasoning

followed by the state court in reaching its decision.")).

     The Kansas Court of Appeals analyzed petitioner's claim under

Strickland, found that the allegations raised factual issues for the

                              -26-

trial court to determine and held that the trial court's decision that "at all stages of [petitioner's] case, he was represented by effective and competent counsel" was supported by substantially competent evidence.  Brown v. State, No. 86,628 (Kan. Ct. App. Sept. 27, 2002). The Kansas Court of Appeals' determination that Kalb's performance was effective and competent was not an unreasonable application of the Strickland standard.  At the evidentiary hearing on petitioner's K.S.A. § 60-1507 motion, the district court heard testimony from Kalb. Kalb testified she spoke with petitioner prior to the day of the hearing, was not informed of witnesses urged by petitioner, conferred with petitioner regarding whether he should testify and ultimately left the decision to him, reviewed the court file and motions before the proceeding, and met with petitioner's trial counsel and discussed with him the alleged conflict of interest upon which petitioner's motion for a new trial was based.  (R. Vol. XII at 26-46.)  The trial court's determination that Kalb's testimony was more credible than petitioner's is a factual issue that will not disturbed.  See 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue shall be presumed to be correct").  Further, Kalb's decision to rely on the filed motion's presentation of the conflict of interest allegations, rather than interview the trial counsel at the hearing, was not unreasonable, especially where Kalb testified that she felt the accuracy of the allegation had already been sufficiently set forth. The Kansas Court of Appeals' conclusions are reasonable in light of Strickland's directive to determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S.

-27-

at 689-90.

In addition, counsel's actions were not prejudicial. The proposed witness testimony is not compelling. The witnesses petitioner complains were not called supposedly would have testified that: 1) witness Shannon Cooper was not petitioner's friend and did not speak to petitioner alone; 2) petitioner's trial counsel Barry Albin stated that petitioner was a criminal and belonged in jail; and 3) witness Glenda Sands represented that she was married to petitioner. Even assuming petitioner's proposed witnesses would have testified as outlined in the affidavits, petitioner has not shown how this testimony would have changed the outcome of his trial. The allegations made regarding the proposed witnesses' testimony are not so probative or relevant as to cause the Kansas courts to grant a motion for a new trial. See K.S.A. § 22-3501 (permitting a court to grant a motion for a new trial "if required in the interest of justice"). Thus, counsel's representation of petitioner on his motion for a new trial was based on legitimate strategic choices and was not prejudicial. Petitioner's claim for habeas relief on this ground is DENIED.

2. Trial Counsel Albin

Petitioner asserts his appointed trial counsel, Barry Albin, was ineffective based on the following:

> Counsel failed; find witnesses provided by petitioner, preserve issue for appeal, hire an investigator to find witnesses, when he was unable to, failed to object to the admission of unidentified bone and teeth fragments on grounds of prejudice, to use evidence provided by the petitioner, Counsel made prejudicial statements

-28-

> to [defense] witnesses, Counsel had conflict of
> interest because of gay relationship with
> prosecutor's witness.

(Doc. 1.)   In his supporting memorandum, petitioner alleges eleven grounds for finding his trial counsel, Barry Albin, ineffective.  The eleven grounds are: 1) failing to file a motion in limine to exclude prior crimes testimony; 2) opening the door to prior bad acts testimony; 3) failing to object to admission at trial of unidentified teeth and bone fragments on the basis of prejudice; 4) failing to object to the admission of bone and teeth fragments because counsel had not been given the bone and teeth fragments during discovery for testing; 5) failing to cross-examine Shannon Cooper regarding his previous history of being an informant; 6) failing to rebut the testimony of David McGee; 7) failing to request an accomplice instruction; 8) failing to request a prior bad acts instruction; 9) failing to request a credibility instruction for the testimony of Shannon Cooper; 10) failing to renew a motion for investigative services; and 11) failing to obtain a preliminary hearing transcript rather than an audiotape.  (Doc. 14.)

Each and every one of the claims petitioner now raises have been presented to the Kansas courts, either on direct appeal or on his K.S.A. § 60-1507 motion.  Respondent asserts, however, that many of petitioner's claims regarding the ineffective assistance of Albin are procedurally defaulted.

First, the court addresses the claims considered by the Kansas Supreme Court on their merits.  In the next subsection, the court considers the claims respondent asserts are procedurally defaulted.

-29-

i.  Ineffective Assistance of Counsel Claims Against Barry Albin, Considered by the Kansas Supreme Court on their Merits.

The following ineffective assistance claims against Albin (now raised to this court) were considered by the Kansas Supreme Court on their merits on direct appeal: 1) failure to find witnesses provided by petitioner and failure to use evidence provided by petitioner; 2) failure to "preserve issue for appeal" (trial counsel did not object at trial to the testimony of Glenda Sands based on marital privilege); 3) counsel made prejudicial statements to defense witnesses and had a conflict of interest because of a relationship with Shawn Cordray, the prosecutor's witness; and 4) failure to cross-examine Shannon Cooper regarding his previous history of being an informant.

a.  Failure to Use Witnesses and Evidence Provided by Petitioner

Petitioner asserts his trial counsel was ineffective for failing to find witnesses and use evidence provided to him by petitioner.  In his direct appeal to the Kansas Supreme Court, petitioner's appellate counsel alleged "that Mr. Brown had provided the names and addresses of witnesses who could support his case to Mr. Albin but Mr. Albin failed to interview them."  (Br. of Appellant at 42, State v. Brown, 266 Kan. 563, 973 P.2d 773 (1999).)  In response to this allegation, Albin claimed he talked to all the witnesses he thought would help his client's case and for which he had correct contact information.  (R. Vol. I at 70.)  Upon consideration of this claim, the Kansas Supreme Court stated, in pertinent part:

The evidence brought forward by Brown in his pro se motion was not complemented by any additional

-30-

> evidence. . . . Brown did not submit the names
> and addresses of the witnesses that he says Albin
> failed to interview.

State v. Brown, 266 Kan. 563, 578, 973 P.2d 773, 783 (1999).

Similarly, in his petition before this court, petitioner fails to further support, in any manner, this claim of ineffective assistance of counsel.  The burden rests on petitioner to show "the acts or omissions of counsel that are alleged" are not "the result of reasonable professional judgment."  Strickland, 466 U.S. at 694. Petitioner has not supported this particular claim with any argument overcoming the strong presumption that Albin "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Id. at 690.  Petitioner's application for habeas relief on this claim of ineffective assistance of trial counsel is DENIED.

> b.  Failure to Preserve for Appeal the Challenge to
> the Testimony of Glenda Sands Based on Marital
> Privilege

Prior to petitioner's trial, Albin filed a motion in limine seeking to limit the testimony of Glenda Sands to those facts that would not be covered by Kansas' marital privilege. (R. Vol. I at 22.) Albin apparently sought to prove to the court that Sands was petitioner's common law wife.  Albin's motion was denied. (R. Vol. VI at 64.)  At trial, Sands testified that petitioner wrote her a note stating that he had "strangled Mike Gerhard and burned the body." (R. Vol. VII at 354.)  Petitioner asserts Albin should have objected to Sands' testimony at trial, and because he did not so object, the issue was not preserved for appeal.  The Kansas Supreme Court did not

directly consider this argument on petitioner's direct appeal, but only generally held that petition did not meet either prong necessary for finding ineffective assistance of counsel.

Petitioner's argument that Albin rendered ineffective assistance through failure to preserve the marital privilege argument by contemporaneous objection does not rise to a violation of the Sixth Amendment.  To prove the existence of a common law marriage in Kansas, petitioner would have had to prove: 1) capacity of the parties to marry; 2) a present marriage agreement between the parties; and 3) a holding out of each other as husband and wife to the public.  <u>In re Estate of Antonopoulos</u>, 268 Kan. 178, 192, 993 P.2d 637, 647 (1999).  The record is clear that petitioner and Sands never had a marriage ceremony, either in front of a judge or in a church.  (R. Vol. VI at 24, 42.)  The record also shows that petitioner and Sands had, within the previous year, purchased property together, not as husband and wife, but as single persons.  (R. Vol. VI at 47.)  At the hearing on the motion in limine, Sands testified that she had known petitioner for several years and they had dated, but that it was not a steady relationship.  (R. Vol. VI at 42.)  Sands also filed tax returns as an individual, single person.  (R. Vol. VI at 48-49.)  Sands and petitioner did live together, and petitioner and another defense witness testified they considered Sands and petitioner to be married, but there was also credible contrary testimony concerning the existence of a common law marriage.  It is clear that the weight of the conflicting testimony supported a finding that there was no common law marriage.  Thus, it is unlikely the Kansas Supreme Court would have overturned the trial court's determination even if the objection

-32-

had been preserved for appeal.

Additionally, petitioner has failed to show that the introduction of Sands' statement was so prejudicial as to change the outcome of the trial.  Sands' statement at trial was only one of several directly tying petitioner to the crime alleged against him.  Petitioner has not met either prong of the Strickland analysis and his petitioner for habeas relief on this claim of ineffective assistance of trial counsel is DENIED.

c.   Conflict of Interest Evidenced by Prejudicial Statements to, and Relationships with, Witnesses

Petitioner asserts his trial counsel suffered from a conflict of interest which prohibited him from rendering the effective assistance of counsel guaranteed to petitioner by the Sixth Amendment. Petitioner alleges Albin told witnesses petitioner was a criminal and belonged in jail.  Additionally, petitioner believes Albin was engaged in a relationship with Shawn Cordray, a prosecution witness. Petitioner believes that his trial counsel's "fondness for Cordray prevented him from zealously presenting witnesses at trial for fear of implicating Shawn Cordray."

Before the hearing on the motion for a new trial, Albin submitted an affidavit to the court stating, in pertinent part:

> I went to the Dixie Belle Bar and Grill one Wednesday night and saw neighbors. Shawn Cordray came up to me and introduced himself. I spoke to him for several hours and gained valuable information about the case. I do like Shawn. It is true that I said that when I got Charles off, I would represent Shawn because I fully expected him to be charged with the murder that he committed while in a drunken condition. He told me that he was an alcoholic. At the trial, Shawn

-33-

> Cordray denied that he was drinking that night
> and thus my arguments failed.
>
> . . .
>
> It is my statement that I intended to convince
> the jury that Shawn Cordray committed the crime
> and that it was not my client. I put evidence on
> to show that fact and argued it to the jury.

(R. Vol. I at 71.)

In response to this claim, on direct appeal, the Kansas Supreme
Court stated:

> Brown asserts in his motion that statements of
> Albin were prejudicial, but he does not offer any
> evidence to support this assertion.
>
> The strongest argument made by Brown is that
> Albin's statements concerning Cordray presented
> a conflict of interest. This relates to Albin's
> statement in his affidavit that 'I do like Shawn.
> It is true that I said that when I got Charles
> off, I would represent Shawn because I fully
> expected him to be charged with the murder that
> he committed while in a drunken condition.'
>
> There is no showing that this statement precluded
> Albin's ability to examine Cordray, and his
> belief that Cordray was the killer is consistent
> with the trial strategy. Albin's handling of
> Cordray does not show ineffective assistance of
> counsel.

State v. Brown, 266 Kan. 563, 578-79, 973 P.2d 773, 783 (1999).

A court may not presume prejudice from an alleged claim of
conflict of interest unless a petitioner shows that "counsel actively
represented conflicting interests and that an actual conflict of
interest adversely affected his lawyer's performance." Burger v.
Kemp, 483 U.S. 776, 783 (1987) (internal citations and quotations
omitted). Petitioner has not shown an actual conflict of interest and

-34-

the Kansas Supreme Court was not unreasonable in so finding.  The fact that petitioner's trial counsel spoke with an adverse witness or witnesses outside of court proceedings is insufficient.  Petitioner's trial counsel never waivered from his theory of defense in petitioner's case: that petitioner was innocent of the crime alleged and that it was Shawn Cordray who should have been charged.  The Kansas Supreme Court's determination on this issue is reasonable in light of Strickland's standards and is not contrary to, or an unreasonable application of, clearly established federal law. Petitioner's application for habeas relief on this claim of ineffective assistance of trial counsel is DENIED.

> d.  Failure to Cross-Examine Shannon Cooper based on his Informant Status

Petitioner asserts Albin was ineffective for failing to bring out on cross-examination of Shannon Cooper that Cooper had "testified at several trial[s] in the past."  (Doc. 14.)  However, as supporting facts, petitioner only alleges: 1) in return for testifying, felony forgery charges were dropped against Cooper; and 2) "Shannon Cooper has testified several times for Wyandott[e] County.  Every time the State does have evidence Shannon is put in the cell with them because he always 'gets' a statement."  (Doc. 14.)  The Kansas Supreme Court did not specifically address petitioner's claim of ineffective cross-examination by Albin of Shannon Cooper, but generally affirmed the district court's finding that Albin's representation was adequate.

At trial, the jury was informed that felony forgery charges were dropped against Cooper in exchange for his testimony.  (R. Vol. XII at 323.)  Therefore, any claim that Albin failed to bring out this

point is without merit.  Petitioner has not supported his second premise with any supporting facts, especially not any facts Albin would have known at the time of his cross-examination.  The jury was informed that Cooper resided in the Wyandotte County jail on charges of felony forgery, both at the time he gained information and at the time he testified.  (R. Vol. XII at 315.)  Cooper was asked on direct examination "are you making up this story in order to get a deal" and Cooper answered "No, sir."  (R. Vol. XII at 323.)  Cooper also testified on direct examination that in return for testifying truthfully he had been promised that his forgery case and probation violations would be dismissed.  (R. Vol. XII at 323.)  On cross-examination, Albin asked Cooper if he was a person who tells the truth, and Cooper answered that he did tell the truth concerning the "majority of things."  (R. Vol. XII at 326.)  Cooper also testified on cross-examination that he approached his attorney with his information and asked his attorney to see if he could "get a deal." (R. Vol. XII at 330.)  On redirect, Cooper was asked whether he "would lie about something as serious as this" and Cooper answered that he would not. (R. Vol. XII at 334.)

Albin's performance was not "outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. Albin questioned Cooper about his propensity for truth-telling and questioned him about his desire to "get a deal" from the prosecutors. The Kansas Supreme Court's determination that Albin's representation was effective was not contrary to or an unreasonable application of federal law.  <u>See</u> 28 U.S.C. § 2254(d).

In addition, the failure to impeach Shannon Cooper did not prejudice petitioner.  Counsel did ask questions of Cooper concerning Cooper's bargain.  Cooper's testimony already revealed that he was a fellow inmate of petitioner and thus the jury already had to evaluate whether to credit his testimony.  There is no reasonable probability that the jury would have returned a different verdict had trial counsel further impeached Cooper.  Petitioner's application for a habeas relief based on this claim is DENIED.

> ii.   Procedurally Defaulted Ineffective Assistance of Counsel Claims Against Barry Albin

The following ineffective assistance claims were raised against Albin in petitioner's K.S.A. § 60-1507 motion: 1) failing to hire an investigator to find witnesses when Albin was himself unable to and/or failing to renew a motion for investigative services; 2) failing to object to the admission of unidentified bone and teeth fragments on grounds of prejudice; 3) failing to file a motion in limine to exclude prior crimes testimony; 4) opening the door to prior bad acts testimony; 5) failing to object to the admission of bone and teeth fragments because counsel had not been given the bone and teeth fragments during discovery for testing; 6) failing to rebut the testimony of David McGee; 7) failing to request an accomplice instruction; 8) failing to request a prior bad acts testimony instruction; 9) failing to request a credibility instruction for the testimony of Shannon Cooper; and 10) failing to obtain a preliminary hearing transcript rather than an audiotape.  These claims were not considered by the Kansas Court of Appeals and respondent asserts these claims are procedurally defaulted.

As discussed above, a claim is procedurally defaulted and unreviewable by a federal habeas court when petitioner's claim has been defaulted in state court on an independent and adequate state ground.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision.  For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims."  <u>Hickman v. Spears</u>, 160 F.3d 1269, 1271 (10th Cir. 1998).

The Kansas Court of Appeals held that the claims listed above were prohibited from review by K.S.A. § 60-1507(c) which states that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."  The Kansas Court of Appeals stated:

> Brown had full opportunity to raise any and all appropriate issues attacking the adequacy of his trial counsel in the motion for new trial and the direct appeal to the Kansas Supreme Court. . . .
> . . .
> The issues Brown now raises could reasonably have been addressed along with the other claims of ineffective assistance raised in his motion for new trial or before the Kansas Supreme Court. Brown has failed to show there have been any unusual events or intervening changes in the law that would constitute exceptional circumstances precluding dismissal under K.S.A. 60-1507(c).  We conclude the district court did not err in its dismissal of Brown's 60-1507 motion concerning claims against Albin.

<u>Brown v. State</u>, No. 86,628 (Kan. Ct. App. Sept. 27, 2002).  Thus, the Kansas Court of Appeals determination is independent in that it relies on state law grounds for refusing consideration of petitioner's

claims.   The determination is adequate because it is regularly followed and applied evenhandedly to similar claims.   See <u>Brown v. State</u>, 198 Kan. 527, 528 426 P.2d 49, 50 (1967)(affirming the trial court's dismissal of particular allegations by the petitioner because the broad issue had previously been considered by the Supreme Court on appeal and "a proceeding under the provisions of K.S.A. 60-1507 is not to be used as a substitute for a second appeal"); <u>State v. Foulk</u>, 195 Kan. 349, 351, 404 P.2d 961, 963 (1965) ("[A]ny further attempt to seek the same relief would be a second or successive attempt which is forbidden by 60-1507(c).").

When a claim has been defaulted in state court on independent and adequate state grounds, the federal habeas court will only consider the claim if petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice." <u>English v. Cody</u>, 146 F.3d 1257, 1259 (10th Cir. 1998).   Therefore, despite being procedurally defaulted, petitioner's claim could be heard if he shows cause for the default and actual prejudice.   Petitioner has alleged neither.   A review of petitioner's very numerous pro se submissions and the record gives this court no indication of any reason for not raising the entirety of petitioner's ineffective assistance of counsel claims against Albin at once, on direct appeal.   Further, as discussed throughout this memorandum and order, petitioner has not shown prejudice because he has not shown he is probably innocent of the crime of which he was charged.   Petitioner's application for habeas relief on this ground is DENIED.

F.  GROUND SEVEN - FULL AND COMPLETE HEARING DURING STATE COLLATERAL REVIEW

-39-

Petitioner alleges he was not given a "full and complete hearing for his State K.S.A. 60-1507 Motion Hearing" and has therefore suffered a violation of his Sixth Amendment rights. Petitioner's supporting facts state:

> Petitioner filed; Motion of Discovery, Motion of Transfer for witnesses, Motion for the State to Produce it's witnesses to face BRADY AND NAPUE alligations also for D.N.A. test allegedly done in petitioner's trial, Motion for investigative Services, to find evidence and witnesses to support petitioner's claims: All motions were denied. Petitioner was not allowed to call witnesses or question trial counsel of his ineffectiveness.. Petitioner filed a Motion of recusal of Judge Burdett, which was denied by Judge Burdett. [sic throughout]

Petitioner's supporting memorandum does not expand on this ground. Petitioner states he was not given "a full and complete hearing as required by law." Petitioner substantively says no more other than to conclude that rulings should have been made in his favor both before and at the K.S.A. § 60-1507 hearing and, because they were not, his Sixth amendment rights were violated.

An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of <u>federal</u> law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Federal law does not require that states provide any state collateral review. <u>See Pennsylvania v. Finley</u>, 481 U.S. 551, 557 (1987)(stating that states have no obligation to provide collateral relief). Thus, "a claim that procedural errors occurred during the state post-conviction proceedings would not rise to the level of a federal constitutional claim cognizable in habeas corpus." <u>Hopkinson v. Shillinger</u>, 866 F.2d 1185, 1219 (10th Cir. 1989). Even "due process challenges to post-

conviction procedures fail to state constitutional claims cognizable in a federal habeas proceeding." United States v. Dago, 441 F.3d 1238, 1248 (10th Cir. 2006). Under AEDPA's standard of review, petitioner is not entitled to relief because he has demonstrated no United States Supreme Court precedent at the time of the Kansas court's decision that clearly established the right to some evidentiary hearing other than what he was afforded. Petitioner's application for habeas relief on this ground is DENIED.

G.  GROUND EIGHT[1] - SUFFICIENCY OF THE EVIDENCE

Petitioner alleges there was insufficient evidence to convict him of first degree murder and that, based on the prosecution's theory of the case, he should have only been convicted of a "heat of passion killing." Petitioner states:

> In petitioner's Motion for Retrial hearing, both the prosecutor and trial judge admitted the possible showing of 'heat of passion' had been present in petitioner's trial. The state's motive for the alleged killing was that Mr. Brown had killed Michael Gerhard because he was [mad] that he believed Mr. Gerhard had burnt his house. Mr. Brown allegedly got into a fight with [Gerhard] at his salvage yard and killed Gerhard as a result of the fight. The fight happened immediately after Mr. Gerhard's arrival at Mr. Brown's salvage yard.

(Doc. 1.)[2]  In petitioner's supporting memorandum, he alleges many

_____

[1]  Petitioner, in totality, alleges only nine broad grounds for relief. By his numbering, however, petitioner skips ground eight and moves from ground seven to ground nine in his filings. Therefore, the court's ground eight is petitioner's ground nine. The court's ground nine is petitioner's ground ten.

[2]  This statement is obviously inconsistent with actual innocence.

trial errors already discussed elsewhere, but appears to be generally alleging that the prosecution did not prove its theory of the crime committed.  (Doc. 14.)

When considering sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution.  Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003).  Under that standard, habeas relief may only be granted if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).   The jury's determination must be accepted as long as it is within the bounds of reason.  Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Though it involves factual issues, a challenge to the sufficiency of the evidence is reviewed for legal error.  Id.  Accordingly, under AEDPA the court is limited to determining whether the Kansas Supreme Court reasonably applied the Jackson standard in this case.  Id.

Under Kansas law, in order to convict petitioner of first degree murder, the jury had to conclude that he intentionally killed the victim with premeditation.  See K.S.A. § 21-3401(a)("Murder in the first degree is the killing of a human being committed: Intentionally and with premeditation.").  Although Gerhard's body was never found, the circumstantial evidence admitted at trial was sufficient to support a conviction against petitioner. Shawn Cordray testified that petitioner was very upset after the house on his salvage yard burned down with pet animals inside and that petitioner stated if "he found out who did it, that he was going to kill them."  (R. Vol. VII at 145.)  Cordray also testified that petitioner suspected Gerhard had

-42-

started the fire. (R. Vol. VII at 149.) Cordray testified he was at the salvage yard with Gerhard and petitioner on November 5, the day the prosecution alleged Gerhard was killed by petitioner. (R. Vol. VII at 152.) Cordray testified that petitioner and Gerhard entered a camper on the property and he then heard muffled yelling, after which petitioner came out of the camper. (R. Vol. VII at 156.) Cordray testified that he then followed petitioner into the camper and observed Gerhard's dead body. (R. Vol. VII at 158.) Cordray testified petitioner told him he killed Gerhard because Gerhard burned down petitioner's house, and then Cordray helped petitioner dispose of the body by burning it in a burn pile on the salvage yard. (R. Vol. VII at 164-66.)

In addition to Shawn Cordray's testimony, Glenda Sands also implicated petitioner. Sands testified that petitioner suspected Gerhard had started the fire and that petitioner wrote her a note stating that he had "strangled Mike Gerhard and burned the body." (R. Vol. VII at 354.) At trial, there was also testimony from Shannon Cooper, a jailhouse inmate of petitioner. Cooper testified that petitioner stated he had killed Gerhard inside a trailer with a phone cord and burned his body because petitioner suspected Gerhard had stolen drugs and burned down the house on his salvage yard property. (R. Vol. VII at 318-19.)

This testimony was further corroborated by circumstantial evidence put on by the prosecution. This evidence showed that search dogs, trained to alert to the scent of human remains, identified human remains at a particular spot on the salvage yard. (R. Vol. VII at

-43-

384-88.)   In addition, the prosecution put on evidence that adult human bones that had been burned were found in the same area.  (R. Vol. VII at 431.)

The prosecution sufficiently showed intentional, premeditated murder.  Based on all the above evidence, the jury's determination that the killing was not committed in the heat of passion but that petitioner, intentionally and with premeditation, killed Gerhard was rational.  The evidence is circumstantial, but it cannot be said that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. at 319 (1979).

The Kansas Court of Appeals concluded that the evidence was sufficient to uphold the jury verdict.  Brown v. State, No. 86,628 (Kan. Ct. App. Sept. 27, 2002).  That conclusion was neither contrary to, nor an unreasonable application of, Jackson.  Accordingly, petitioner's application is DENIED on this claim.

H.   GROUND NINE - CONSTITUTIONALITY OF FIRST DEGREE MURDER STATUTE

For his final ground, petitioner asks: "Did [the] trial court have jurisdiction to sentence defendant using an unconstitutional conviction premised on a first degree murder statute and jury instructions which were also constitutional?"  Petitioner's supporting facts state: "Defendant/Petitioner was tried for first degree murder. The Statute does not contain the element of malice nor do the jury instructions."  Petitioner believes that because the first degree murder statute does not require malice, it shifts the burden of proof to defendants from prosecutors and is unconstitutionally vague.

The Kansas Supreme Court cited state court decisions rejecting

petitioner's challenge to the constitutionality of the first degree murder statute. Those state court decisions apply the same principles as federal precedent, requiring the trial court to instruct the jury that prosecution must prove all of the elements beyond a reasonable doubt and holding that a jury may not be allowed to presume the existence of any particular element. See Patterson v. New York, 432 U.S. 197, 205-06 (1977); In re Winship, 397 U.S. 358, 364 (1970) (holding that due process requires all elements of criminal charges to be proven beyond a reasonable doubt).

Accordingly, the Kansas Supreme Court's decision may be viewed as an application of federal law and, under AEDPA, it will be upheld as long as it was a reasonable application of that federal precedent. The jury was instructed on the elements of first degree murder - the intentional, premeditated killing of a human being. (R. Vol. I at 39.) The jury was instructed that each element must be proven by the State beyond a reasonable doubt. (R. Vol. I at 44.) Thus, as an initial matter, Kansas' first degree murder statute does not impermissibly shift the burden of proof by not requiring malice and the jury was correctly instructed as to the same.

A law is void for vagueness when "its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). "The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). Judicial

review of a penal statute is "restricted to consideration of the statute as applied in a particular case, provided the statute does not threaten to chill the exercise of constitutional rights." <u>United States v. Platte</u>, 401 F.3d 1176, 1189 (10th Cir. 2005).

Petitioner cannot claim that Kansas' first-degree murder statute chills constitutionally protected conduct. Thus, the statute is examined only as-applied. The Kansas Supreme Court addressed vagueness of the first degree murder statute on its merits and therefore AEDPA's deferential standard of review applies. The Kansas Supreme Court found that because the first degree murder statute requires the prosecution to prove intentional, premeditated murder of a human being, the statute is not unconstitutionally vague.

As stated above, Kansas' first degree murder statute requires the prosecution to prove intentional, premeditated killing of a human being. K.S.A. § 21-3401(a). At trial, the jury was instructed that petitioner was guilty of first-degree murder if he "intentionally killed Michael Gerhard," the "killing was done with premeditation" and the "act occurred on or about the 5th day of November, 1995, in Wyandotte County, Kansas." (R. Vol. I at 39.) Premeditation was defined as "to have thought over the matter beforehand" and "intentionally" was defined as "conduct that is purposeful and willful and not accidental." (R. Vol. I at 43.) The jury was also instructed that petitioner could be found guilty of the lesser included offenses of second degree murder and voluntary manslaughter if there was "reasonable doubt as to which of two or more offenses the defendant is guilty." (R. Vol. I at 40-42.)

-46-

Under AEDPA's deferential standard of review, the Kansas Supreme Court's rejection of petitioner's void for vagueness challenge neither contravened nor unreasonably applied federal law. An ordinary person can discern a difference between what is legal versus illegal conduct under the first-degree murder statute. The prohibitions of the statute are therefore clearly defined. Petitioner's application for habeas relief on his final ground is DENIED.

## III.  CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is DENIED. A motion for reconsideration is neither invited nor encouraged. Any such motion shall not exceed three double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (D. Kan. 1992). No reply shall be filed. Identical requirements and restrictions shall apply to any application for certificate of appealability or any other submission, however styled, directed to this Memorandum and Order.

IT IS SO ORDERED.

Dated this <u>  27th  </u>  day of November 2006, at Wichita, Kansas.


<u>S/ Monti Belot              </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-47-